396 A.2d 1230

**Leon J. SULLIVAN and Elizabeth Sullivan, Appellants,**

**v.**

**Isadore WOLSON, Individually and t/a Wolson Furniture Co.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1978.

Decided Dec. 14, 1978.

Reargument Denied Feb. 14, 1979.

Petition for Allowance of Appeal Denied Feb. 23, 1979.

William C. Archbold, Jr., Media, for appellants.

Edward J. Carney, Jr., Media, for appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the court below erred in refusing to grant her a new trial because the trial judge erroneously: (1) charged the jury that she (plaintiff below) might be found contributorily negligent, (2) charged that appellee (defendant below) might be excused from liability because of a sudden emergency, and (3) failed to charge that the defendant could be found guilty of reckless and wanton misconduct. We agree with the first two of these contentions, and therefore remand the case for a new trial.

This lawsuit grows out of a series of three collisions all occurring within two or three minutes of each other on Township Line Road in Upper Darby Township. Township Line Road is a 60 foot wide highway, with six lanes divided by a double yellow line, and a posted speed limit of 35 m. p. h. There are two driving lanes each for eastbound and westbound drivers, and on either side of the road is an outermost parking lane, which is not used for traffic. Proceeding westerly, the road passes through several intersections: Dermond, Reservation, Apache, and Oleander Roads, respectively. On the north side between Reservation and Oleander, a series of houses front onto Township Line Road with driveway access to the westbound lanes.

Appellant testified as follows. She was driving westerly on Township Line Road on January 9, 1970, early in the morning on a clear day. Although it had snowed earlier in the week, the road was clear up to Dermond Road. Past that point, however, the road surface was visibly icy. Just past Reservation Road, she had a slight rear-end collision with a car in front of her driven by Harold Merves. Merves pulled his car over to the extreme right, and stopped along the curb in the westbound parking lane. Seeing this, appellant also pulled over into the parking lane, stopping about three car lengths in front of Merves, near the corner of Apache Road.

As appellant parked her car, she looked in her rear-view mirror and saw a vehicle driven by John Charles Moore come up from behind Merves, hit the left rear of Merves' car and skid all the way across Township Line Road. Merves' car was still at the curb—it did not seem to have moved much from the impact. Neither of the cars were blocking the driving lanes of the highway; there was still room for two westbound cars to pass.

Appellant got out of her car, walked back and met Merves at the curb in front of his car. Moore got out of his car, crossed the street, and joined appellant and Merves in between the cars. At this point appellant lost consciousness, and woke up lying on the road, dazed.

Harold Merves' testimony concerning the conditions of Township Line Road matched appellant's testimony. After Dermond Road, he could see the ice on Township Line Road and other cars slowing down on it. It was icy enough, he thought, that a good driver would know it would be a "horrible thing" to brake on suddenly. Appellant's car made a very slight contact with the rear of his car in the right-hand driving lane, and then passed him on the left. He slowed down to pull over, but before he got out of his lane, he was struck again from behind on the left rear of his car by the vehicle driven by John Charles Moore. The contact pushed the Merves car up against the curb in the parking lane, with the rear of the car at a slight angle, three or four feet away from the curb. Appellant came over to his car and was standing at his left front fender near the curb, exchanging a few words there with him. As Moore approached them, they were hit by an unseen force, and Merves landed on the sidewalk.

The third eyewitness, John Charles Moore, was unavailable at trial, but his deposition was read by appellee Wolson. His description of the conditions of Township Line Road past Dermond matched that of appellant and Merves, except that he thought there remained enough snow accumulated on the highway so that there were not quite two lanes available for traffic. The Merves and Sullivan cars which were stopped within a mile of the point where the road turned icy, were sitting almost side-by-side in the middle of the road, Merves' car on the left and Sullivan's car on the right. Merves and Sullivan were standing in the right-hand lane, in between Sullivan's car and the curb. Finding his passage blocked, Moore stated that he tried to brake, but he skidded on the ice. He came into contact with the left rear bumper and fender of the Merves car at about 30 m. p. h. and then shot across the eastbound lanes to the other side of the road. He got out of his car, and crossed the street to where Merves and Sullivan were standing near the curb. When he arrived, there was a crash and he went flying through the air.

Appellee Isadore Wolson, the verdict winner, testified that he was also driving westerly on Township Line Road, which was clear except for a little snow in the center of the highway and along the curb on either side, about two or three feet out onto the road. As he stopped at the traffic light at Dermond Road, the condition of the road ahead appeared to be the same, a clear, if dirty, blacktop surface. He testified that he could have seen the Sullivan and Merves vehicles stopped ahead if he had looked from there but he was concentrating on the lane of driving ahead.

As he proceeded beyond Dermond Road, he had no problem driving. The accumulation of snow in the center of the highway became wider and deeper, leaving only about a lane and a half for driving. He travelled in the left lane, on the edge of the snow, between 30 and 35 m. p. h. When he passed Reservation Road, he saw Merves' car on the right within the parking lane, with its rear angled out towards the driving lanes. He thought it was a car from one of the houses on the street backing out onto the highway, so he decided to slow down. When he put his foot on the brake, he lost control of his car, which slid down the road past three or four houses, drifting to the right. Just before contact with the right rear of the Merves' car, he saw two people standing at the curb beside the left front fender of the car. His car struck Merves' car, and continued to skid until he stopped in the snow in the center of the highway between Apache and Oleander Roads. Merves' car was pushed across the eastbound lanes to the other curb, near Moore's car, but was turned around and was now facing east. Wolson testified that when he walked back to the accident over the highway, only then did he realize that the road was covered with dirty compacted ice and snow. It was slippery to walk on, but so dirty that it just looked like natural paving. Wolson stated that if he had not applied his brakes when he did, he would have rolled right on by the Merves vehicle without incident.

Appellant first contends that there was no evidence in the record to justify the trial judge's charge to the jury

on contributory negligence. We agree. The only evidence of contributory negligence mentioned in the charge was the appellant's prior collision with Merves.[1] Appellee Wolson, in his brief, also argues that the jury could have found appellant contributorily negligent in that she voluntarily placed herself in a position of known danger when she remained standing in the parking lane of Township Line Road, next to the curb, in between the parked cars, even after witnessing the Moore collision.[2]

A plaintiff's antecedent negligence will not bar his recovery unless his negligence contributed to his injury as a proximate cause. *Taylor v. Fardnik*, 231 Pa.Super. 259, 331 A.2d 797 (1975); *Hunger v. La Barre*, 224 Pa.Super. 507, 307

1. The trial judge's charge on this issue was as follows:

"One who is contributorily negligent cannot recover damages for any injury which she has sustained. It is not permissible to attempt to balance, compare or match the negligence of one party against that of another. You must, therefore, determine whether the plaintiff wife was negligent in that as an ordinarily prudent person under all the circumstances then present, she failed to exercise reasonable care for her own protection. If you find that plaintiff wife was negligent, you must then determine whether her conduct was a substantial factor in bringing about her injuries. If your answer is affirmative on both scores, namely that the plaintiff herself was negligent and that her conduct was a substantial factor in causing her own injuries, your verdict should be for the defendant.

In order to determine whether the negligence complained of in this case is a substantial factor in bringing about the injury to the plaintiff . . . the negligent conduct must have been a factual cause of the harm. . . . [T]here must . . . be a causal connection before the alleged negligence may be a legal cause. I tell you and you are not bound by what I am about to tell you. You are free to do whatever you want from the facts as you find them, but I tell you that in my opinion the first incident which occurred between plaintiff wife and the car operated by Merves which led to their being parked on the side is what I consider to be an insignificant connection with this accident. But I leave that to you and you alone to determine. There may be more than one substantial factor in bringing about an accident."

2. These were the facts as testified to by defendant, the verdict winner, plus appellant and appellant's witness Merves. Of the four eyewitnesses, only Moore testified that the cars were parked in the driving lanes, and that appellant stood unprotected beside them. Moore agreed that appellant was standing next to the curb, but in most other respects, his testimony contradicted the testimony of the other three eyewitnesses, who told substantially the same story.

A.2d 407 (1973); *Walters v. Char-Mar, Inc.*, 220 Pa.Super. 79, 284 A.2d 139 (1971). To determine whether the actor's conduct is the proximate, or legal cause of harm, the court must consider (1) the number and extent of other forces contributing to the harm, (2) the lapse of time from the conduct to the harm, and (3) whether the conduct creates a force in operation up to the time of the harm, or simply creates a harmless situation which is acted upon by other forces for which the actor is not responsible. *Wisniewski v. The Great Atlantic and Pacific Tea Co.*, 226 Pa.Super. 574, 323 A.2d 744 (1974).

By the jury's verdict, we must assume that they found appellant negligent in her collision with Merves. However, while this was a "but for" cause in fact of the Wolson collision, still it was not the proximate or legal cause of that collision and appellant's injuries. Under the three-part *Wisniewski* test, we find that (1) this prior collision was a *de minimis* cause of her injuries compared to the nature and extent of the other contributing cause of the collision, namely appellee's conduct; (2) the two collisions were separate in time and place, the Merves' car coming to rest a minute or two before the Wolson collision; and (3) whatever force appellant set in motion came to rest when she and Merves parked their vehicles by the side of the road. This was a harmless situation which was acted upon by an outside force, the appellee Wolson. Thus, there was not sufficient evidence to go to the jury that appellant's antecedent negligence in her collision with Merves was the proximate cause of her injuries.

Appellee's contention that the jury could find appellant contributorily negligent because she stood on the highway in between two parked cars must also fail.

The driver of any vehicle involved in an accident resulting in damage to any vehicle has the duty to stop and give certain information to the other drivers involved in the accident. 75 Pa.C.S.A. § 3744(a). One is not bound to anticipate the negligence of another, that is, it is not contributory negligence to fail to guard against the lack of

ordinary care by another. *Bortz v. Henne*, 415 Pa. 150, 204 A.2d 52 (1964); *Hughes v. Zearfoss*, 194 Pa.Super. 408, 168 A.2d 628 (1961).

In her brief, appellant relies heavily on *Stanik v. Steuber*, 439 Pa. 327, 266 A.2d 703 (1970), *Handfinger v. Barnwell Bros., Inc.*, 325 Pa. 319, 189 A. 312 (1937), and *Reisinger v. McConnel*, 265 Pa. 565, 109 A. 280 (1920). In *Stanik*, the defendant ran out of gas on the Schuylkill Expressway and pulled over and parked on the shoulder of the road, leaving three or four feet between his vehicle and the main roadbed. Another driver stopped to help, but left his car on the highway, causing two approaching vehicles to collide. A summary judgment for defendant was affirmed, the court holding that since defendant's vehicle was parked off the highway in an area provided for emergency stops, and was not obstructing traffic, he was not negligent as a matter of law.

In *Handfinger*, the plaintiff stopped his truck by the side of the highway to repair a light. A truck he was travelling with stopped five feet in front of him. The trucks were parked in a newly constructed outside lane not yet open for traffic, which was clearly marked as such. The plaintiff stepped between the two parked trucks to make the repairs, admittedly without first looking to see if any traffic was coming. Defendant, who admitted his negligence, collided into plaintiff's truck, crushing the plaintiff between the trucks. The court upheld a jury verdict for the plaintiff, holding that "[u]nder these circumstances we cannot hold as a matter of law that plaintiff was under a duty to anticipate that defendant's driver would fail to see his truck and crash into it." *Handfinger, supra* 325 Pa. at 322–23, 189 A. at 314. In *Reisinger*, the plaintiff was parked at the curb changing his left rear tire, facing away from oncoming traffic in a stooped position, when the defendant drove his right front fender into plaintiff's left rear fender, crushing the plaintiff between the vehicles. A verdict for the plaintiff was upheld on appeal, the court holding, "[n]either can plaintiff be held negligent merely because of his presence and position on the

street . . . especially is this true as both his car and himself were outside the direct line of traffic . . . ." *Reisinger, supra* 265 Pa. at 567, 109 A. at 280.

■ Thus, appellant could not be found contributorily negligent merely for stopping, and causing Merves to stop, and parking their vehicles in the parking lane of Township Line Road. *Stanik; Handfinger; Reisinger, supra.* Indeed, if we were to hold otherwise, we would be penalizing plaintiff for her compliance with the commands of the Vehicle Code. Moreover, we do not think that appellant could be found contributorily negligent for standing on the street near the curb in between the two cars. The above-cited cases indicate that the parking lane on the side of a road is a place where a person may reasonably expect to be safe. Appellant was not under a duty to anticipate that a negligent driver would cause his vehicle to skid into the parking lane and injure her. *Bortz; Hughes, supra.*

Thus, the evidence at trial did not make out an issue of contributory negligence, and it was error for the judge to so charge.

There are two other grounds for reversal urged by appellant in this case which merit some discussion. Since we shall have to remand for a new trial in this case, we shall pass upon these contentions now in hope of obviating a future appeal.

Appellant contends that it was error for the trial judge to give the defendant the benefit of a "sudden emergency" charge.[3] We agree.

3. The trial judge's charge on this issue was as follows:
"Now, you will recall and as I have always told you and I will continue to tell you, your recollection is controlling, but the defendant's testimony would indicate to you, and he urges you to believe, that he was confronted with what is known as a sudden emergency. He tells you that due to the negligent conduct of the plaintiff wife he was faced at the time of this occurrence with a sudden emergency, not brought about by any conduct of his own. The sudden emergency rule is that where one finds himself in a position of danger which was not the result of his own negligence, he will not be held responsible if he makes a mistake of judgment in extricating himself from the danger situation in which he finds himself.

In *Brown v. Schriver*, 254 Pa.Super. 468, 386 A.2d 45, 49 (1978) the defendant drove his automobile within the speed limit around a turn and lost control of his car because of some gravel and cinders which had accumulated on the road after an earlier snowfall. A passenger brought suit for his injuries sustained in the car's crash through a fence and into a tree. At trial, the court gave a sudden emergency charge. We reversed, holding that since the gravel on the road was a stationary object rather than a moving instrumentality suddenly and unexpectedly thrust into the path of travel, it was appropriate to charge the "assured clear distance" rule (*see Unangst v. Whitehouse*, 235 Pa.Super. 458, 344 A.2d 695 (1975)) rather than "sudden emergency."

 Here, all the witnesses agreed that there was ice or hard packed snow on Township Line Road beyond Dermond Road due to a previous snowfall. Defendant in his testimony admitted that if he had looked from Dermond Road, he could have seen the Merves and Sullivan vehicles, stationary and parked by the side of the road. Thus, there was no

"One confronted by a sudden perilous situation not created by some fault of his own is not required to exercise the highest or even the ordinary degree of judgment. One may legally be blameless in spite of an error of judgment where another has placed him in a situation where it would be unreasonable to hold him to the exercise of cool and correct judgment.

"Now, the defendant wants you to apply the sudden emergency principle in this case because of the possibility that you might conclude that he should have acted differently under the circumstances of this case. He contends that under the circumstances, you should not hold him to strict accountability for accuracy or judgment because in his view the emergency was sudden and not created by any wrongful act of his own.

"Any party who is free of fault in bringing about a dangerous situation may claim the advantage of the doctrine of sudden emergency. To make use of the rule in one's favor, the party invoking it, and in this case the party seeking to invoke it is the defendant, must not have caused the hazardous condition by his own prior negligence. When one claims that he was subjected to a sudden emergency, the doctrine will not come to his rescue if he, himself, was so reckless, negligent, or careless as to cause the situation to arise.

"In such case, had he been careful, the danger would not have arisen in the first instance. The question whether or not the defendant was confronted with the sudden emergency as I have defined it is for you, you alone to decide, considering all of the circumstances and testimony in this case."

sudden emergency thrust at the defendant; rather the snow and ice on the road and the presence of the stopped cars were all preexisting conditions. *Brown v. Schriver* is right on point. It was error for the judge to charge "sudden emergency;" and on remand should only give an "assured clear distance" instruction.[4]

Appellant next contends that the trial judge erred in failing to charge the jury on the standards by which it might find the appellee guilty of reckless driving. Here, we disagree for the reasons which follow.

The Restatement (2d) of Torts § 500 [5] states: "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." In *Evans v. Philadelphia Transp. Co.*, 418 Pa. 567, 574, 212 A.2d 440, 444 (1965), the Court said: "[I]f the actor realizes or least has knowledge of sufficient facts to cause a reasonable man to realize the existing peril for a sufficient period of time beforehand to give him a reasonable opportunity to take means to avoid the accident, then he is guilty of wanton misconduct if he recklessly disregards the existing danger." Thus, whether it is termed "reckless disregard," or "wanton misconduct," this basis of liability in tort is premised upon the actor intentionally doing an act creating

4. In this case the judge instructed the jury on *both* the "sudden emergency" rule and the "assured clear distance" rule. This was error. In a given factual situation, the two charges are mutually exclusive. *Brown v. Schriver,* 254 Pa.Super. 468, 386 A.2d 45 (1978); *Reifel v. Hershey Estate,* 222 Pa.Super. 212, 295 A.2d 138 (1972).

5. Our Supreme Court in *Evans v. Phila. Transp. Co.*, 418 Pa. 567, 574, 212 A.2d 444, 449 (1965) adopted the Restatement (1st) of Torts § 500 as the law of Pennsylvania. The Reporter to the Second Restatement has stated: "This Section has been changed from the first Restatement by rewording it in the interest of clarity. No change in substance is intended." Restatement (2d) of Torts § 500 (Appendix).

a great risk of harm when the actor either (1) knows of the great risk, but consciously disregards it and proceeds, or (2) had knowledge of facts which would lead a reasonable man to become aware of this risk in time for the actor reasonably to avoid the danger. *See Fugagli v. Camasi*, 426 Pa. 1, 3, 229 A.2d 735 (1967); *Golden v. Sommers*, 56 F.R.D. 3, 5 (1972). Of course, the actor's actual knowledge of the risk may be inferred from the facts presented. *Williams v. Phila. Transp. Co.*, 219 Pa.Super. 134, 138, 280 A.2d 612, 615 (1971). If the jury finds the defendant guilty of reckless or wanton misconduct, then appellant's contributory negligence is not a bar to recovery. *Id.*, 219 Pa.Super. at 137, 280 A.2d at 614; Restatement (2d) of Torts, § 482.

■ While we think the evidence presented is sufficient to send the issue of appellee's negligence to the jury, we see nothing to justify a charge of reckless or wanton misconduct. Appellee put on his brakes because of a misapprehension that the Merves vehicle was backing out onto the road. This misapprehension may have been careless, but it can hardly be said to have exposed the appellant to a greater risk than negligent conduct under the circumstances. If he had not put on his brakes, appellee testified, he would have driven right on by the Merves vehicle without incident.

Appellee also stated that when he observed the conditions of the road, it appeared to be a clear, if dirty, blacktop surface. Again, this was a misapprehension from which one could find negligence, but it does not approach the conscious, knowing disregard of danger which would justify a recklessness charge, and there is nothing in the record to suggest that appellee was aware of facts which should have made him aware of this danger. He testified that he did not see any of the prior collisions, which might have put a reasonable man on notice that the road was unusually hazardous. The other eyewitnesses, who never saw his car approaching, were therefore unable to indicate the manner in which appellee was driving.

In sum, all that is in evidence is a couple of misapprehensions by the appellee, which because of the icy condition of

the road, led to this unfortunate accident. Whether these misapprehensions were negligent is a question for the jury, but the evidence does not allow a charge of reckless or wanton misconduct.

Appellant has argued several other grounds for reversal, but we have examined these and have determined that they are not meritorious.

The order of the court below denying appellant's motion for a new trial is reversed; the case is remanded for a new trial consistent with this opinion.

PRICE, J., dissents.